UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INDICTMENT** CR-10-34 PJS/JJK |
| | ) | |
| Plaintiff, | ) | (18 U.S.C. § 371) |
| | ) | (18 U.S.C. § 1343) |
| v. | ) | (18 U.S.C. § 1956(h)) |
| | ) | (18 U.S.C. § 1957) |
| 1. GERALD JAMES GREENFIELD, and | ) | (18 U.S.C. § 981(a)(1)(C)) |
| | ) | (18 U.S.C. § 982(a)(1)) |
| 2. NICHOLAS RYAN DELON SMITH, | ) | (28 U.S.C. § 2461(c)) |
| | ) | |
| Defendants. | ) | |

THE UNITED STATES GRAND JURY CHARGES THAT:

### COUNT 1
(Conspiracy to Commit Mortgage Fraud Through Use of the Wires)
18 U.S.C. § 371

1.    At all times relevant to this Indictment, defendants Gerald James Greenfield (hereinafter, "Greenfield") and Nicholas Ryan Delon Smith (hereinafter, "Smith") were individual residents of the State of Minnesota.

2.    At all times relevant to this Indictment, defendant Greenfield (who held himself out as a representative of "Australian Real Estate Development" or "ARED") had an arrangement with an Australian attorney coconspirator to invest substantial sums of money in the mortgage fraud scheme described below.

3.    At all times relevant to this Indictment, defendant Smith was the sole owner of i) HELOC, Inc., a mortgage brokerage company located in Minneapolis, Minnesota which brokered several fraudulent loans pursuant to the mortgage fraud scheme described below; and of ii) Heartland USA, another mortgage brokerage company which was the

SCANNED

MAR 08 2010

U.S. DISTRICT COURT ST. PAUL

FILED **FEB 1 0 2010**
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTERED
DEPUTY CLERKS INITIALS

(1)

<u>U.S. v. Greenfield, et al.</u>

transitory owner of certain units in the Sexton Lofts Condominium Building located in downtown Minneapolis (the "Sexton Lofts"), as described below.

4.   At all times relevant to this Indictment, Coconspirator A had an ownership interest in the Sexton Lofts and had a substantial financial incentive to sell them to third parties.

5.   From in or about August of 2006 and through in or about May of 2007, in the State and District of Minnesota, the defendants,

<div align="center">

**GERALD JAMES GREENFIELD**, and
**NICHOLAS RYAN DELON SMITH,**

</div>

did unlawfully, willfully and knowingly conspire, combine, confederate and agree with Coconspirator A and with other persons known and unknown to the grand jury to devise and execute by means of interstate wire transfers a scheme to defraud certain mortgage lenders by arranging for the fraudulent purchase of condominiums located in the Sexton Lofts by various unqualified buyers at prices exceeding the true values of the condominium units in violation of Title 18, United States Code, Section 1343.

<div align="center">

**OBJECT OF THE CONSPIRACY**

</div>

6.   It was the object of the conspiracy to sell units in the Sexton Lofts in a deteriorating market by recruiting financially unqualified buyers and then fraudulently inducing lenders to loan

<div align="center">2</div>

U.S. v. Greenfield, et al.

them money to purchase the condominium units at greatly inflated prices, thereby generating profits and proceeds which the defendants shared.

### MANNER AND MEANS

It was part of the conspiracy that from in or about August of 2006 through in or about April of 2007:

7.   In August of 2006, Coconspirator A, defendant Smith and others arranged for the sale of 6 Sexton Lofts condominium units to unqualified buyers at greatly inflated prices who bought them exclusively with the proceeds of fraudulently induced loans, and then distributed the illegal proceeds of these sales to a colluding realtor in the form of "high-paid realty commissions," which the realtor then paid to the defendants and others pursuant to the instructions of Coconspirator A.

8.   When Coconspirator A's business partner objected to the "high-paid realty commissions" method of stripping proceeds from the fraudulent sales of the Sexton Lofts condominium units, Coconspirator A recruited defendant Greenfield to participate in selling additional Sexton Lofts condominium units in three immediately-successive steps which were repeated for each of the condominium units sold using the three-step methodology.

9.   In step one, Coconspirator A and defendant Greenfield provided cash to defendant Smith and other unindicted

3

<u>U.S. v. Greenfield, et al.</u>

coconspirators to purchase condominium units in the Sexton Lofts at prices near the true market value of the units (these cash purchasers shall be referred to herein as "Step-One Cash Purchasers").

10.   In step two, the Step-One Cash Purchasers transferred ownership of the condominium units to Coconspirator A.

11.   In step three, Coconspirator A immediately (sometimes within minutes of the transfer to Coconspirator A by the Step-One Cash Purchasers) sold the Sexton Lofts condominium units to unqualified buyers (hereinafter "Step-Three Leveraged Purchasers") recruited by defendant Smith and other coconspirators at prices that ranged from thirty percent to eighty percent more than the prices for which Coconspirator A had just acquired the units.

12.   The Step-Three Leveraged Purchasers paid for the Sexton Lofts condominium units exclusively with funds the defendants arranged for them to borrow fraudulently from mortgage lenders located throughout the United States.

13.   Most of the sales to the Step-Three Leveraged Purchasers generated excess cash which the defendants instructed Stonebrook Title (which closed many of the fraudulent transactions) to hold in its escrow account to fund the step-one cash purchase of the next condominium unit to be moved pursuant to this three-step methodology.

4

U.S. v. Greenfield, et al.

14.   The defendants told the Step-Three Leveraged Purchasers that they would receive money for purchasing Sexton Lofts units and, in some cases, that they would not be responsible for making monthly mortgage payments on the units.

15.   As each of the coconspirators was well aware, Defendant Smith and other coconspirators were mortgage brokers who filled out loan applications for the Step-Three Leveraged Purchasers which contained material, false information about their income and creditworthiness and about the value of the Sexton Lofts condominium units collateralizing the loans.

16.   Each of the defendants received substantial kickbacks of borrowed funds from each sale of a Sexton Lofts unit to a Step-Three Leveraged Purchaser which were not disclosed to any of the lenders.

17.   From September of 2006 through April of 2007, Coconspirator A and the defendants caused thirteen condominium units at the Sexton Lofts to be sold in the manner described above, resulting in losses exceeding $2.5 million to the lenders defrauded in the transactions.

## OVERT ACTS

In furtherance of the conspiracy and to achieve its object, the defendants committed, directly and through accomplices, among other acts, the following overt acts:

5

U.S. v. Greenfield, et al.

18. On or about September 19, 2006, defendant Greenfield caused his Australian attorney coconspirator to wire $300,000 from Australia to Stonebrook Title to fund the step-one cash purchase of Sexton Lofts condominium unit 202.

## Sexton Lofts Condominium Unit 202

19. On or about August 15, 2006, unindicted coconspirator M.R., a mortgage broker, filled out and submitted to a mortgage lender a loan application falsely stating that Step-Three Leveraged Purchaser P.A. had annual employment income of over $100,000.

20. On or about September 22, 2006, Coconspirator A purchased Unit 202 for $213,911 using cash the defendants previously escrowed at Stonebrook Title.

21. On or about September 22, 2006, the defendants caused Step-Three Leveraged Purchaser P.A. to purchase Unit 202 for $390,000 exclusively with the proceeds of a loan fraudulently induced by the false loan application alleged in paragraph 19.

22. On or about September 26, 2006, the defendants instructed Stonebrook Title to retain in escrow the proceeds of the sale of Unit 202 be used to fund defendant Smith's first-step cash purchase of Unit 212.

## Sexton Lofts Condominium Unit 212

23. On or about September 29, 2006, defendant Smith caused a third-party mortgage broker to fill out and submit to a mortgage

6

U.S. v. Greenfield, et al.

lender a loan application falsely stating that Step-Three Leveraged Purchaser U.H., who had been recruited by defendant Smith, worked for KevL Records and had annual employment income of approximately $118,000.

24.   On or about October 4, 2006, defendant Smith(acting as a Step-One Cash Purchaser) purchased Unit 212 for $350,000 using cash the defendants had previously escrowed at Stonebrook Title.

25.   On or about October 4, 2006, defendant Smith transferred title to Unit 212 to Coconspirator A with a quitclaim deed for no consideration.

26.   On or about October 4, 2006, the defendants caused Step-Three Leveraged Purchaser U.H. to purchase Unit 212 for $567,000 exclusively with the proceeds of a loan fraudulently induced by the false loan application alleged in paragraph 23.

27.   On or about October 4, 2006, the defendants paid $173,898.91 to HELOC to compensate defendant Smith and Step-Three Leveraged Purchaser U.H. for their participation in the fraudulent sale of Unit 212.

28.   On or about October 4, 2006, the defendants instructed Stonebrook Title to escrow the funds generated by the fraudulent sale of Unit 212 to be used to fund Step-One Cash Purchaser D.N.'s purchase of Unit 623.

U.S. v. Greenfield, et al.

### Sexton Lofts Condominium Unit 623

29.   In or about September of 2006, unindicted coconspirator T.N., a mortgage broker, filled out and submitted to a mortgage lender a loan application falsely stating that Step-Three Leveraged Purchaser N.H. had  annual employment income of approximately $153,000.

30.   On or about October 4, 2006, Step-One Cash Purchaser D.N. purchased Unit 623 for $441,000 using cash previously escrowed by the defendants at Stonebrook Title.

31.   On or about October 5, 2006, D.N. transferred title to Unit 623 to Coconspirator A with a quitclaim deed for no consideration.

32.   On or about October 10, 2006, the defendants caused Step-Three Leveraged Purchaser N.H. to purchase Unit 623 for $665,000 exclusively with the proceeds of a loan fraudulently induced by the false loan application alleged in paragraph 29.

33.   On or about October 11, 2006, the defendants paid $190,597.43 to T.N. to compensate T.N. and Step-Three Leveraged Purchaser N.H. for their participation in the fraudulent sale of Unit 623.

34.   On or about October 10, 2006, Coconspirator A instructed Stonebrook Title to escrow the remaining funds generated by the

U.S. v. Greenfield, et al.

fraudulent sale of Unit 623 to be used to fund Step-One Cash Purchaser Heartland USA's purchase of Unit 205.

### Sexton Lofts Condominium Unit 205

35.   In or about October of 2006, defendant Smith caused HELOC to fill out and submit to a mortgage lender a loan application falsely stating that Step-Three Leveraged Purchaser V.P., who had been recruited by defendant Smith, had annual employment income of approximately $86,400.

36.   On or about October 25, 2006, defendant Smith caused Step-One Cash Purchaser Heartland USA to purchase Unit 205 for $285,000 using cash previously escrowed by the defendants at Stonebrook Title.

37.   On or about October 26, 2006, defendant Smith caused Heartland USA to transfer title to Unit 205 to Coconspirator A with a quitclaim deed for no consideration.

38.   On or about October 27, 2006, the defendants caused Step-Three Leveraged Purchaser V.P. to purchase Unit 205 for $374,000 exclusively with the proceeds of a loan fraudulently induced by the false loan application alleged in paragraph 35.

39.   On or about October 30, 2006, the defendants caused $63,992.47 to be paid to HELOC circuitously through a third party to compensate defendant Smith and Step-Three Leveraged Buyer V.P. for their participation in the fraudulent sale of Unit 205.

U.S. v. Greenfield, et al.

40.   On or about October 27, 2006, the defendants instructed Stonebrook Title to escrow the remaining funds generated by the fraudulent sale of Unit 205 to be used to fund First-Step Cash Purchaser Heartland USA's purchase of Unit 620.

### Sexton Lofts Condominium Unit 620

41.   In or about November of 2006, defendant Smith caused HELOC to fill out and submit to a mortgage lender a loan application falsely stating that Step-Three Leveraged Purchaser T.D., who had been recruited by defendant Smith, worked for KevL Records and had annual employment income of approximately $166,800.

42.   On or about November 20, 2006, defendant Smith caused Step-One Cash Purchaser Heartland USA to purchase Unit 620 for $348,000 using cash previously escrowed by the defendants at Stonebrook Title.

43.   On or about November 21, 2006, defendant Smith caused Heartland USA to transfer title to Unit 620 to Coconspirator A with a warranty deed for no consideration.

44.   On or about November 29, 2006, the defendants caused Step-Three Leveraged Purchaser T.D. to purchase Unit 620 for $483,000 exclusively with the proceeds of a loan fraudulently induced by the false loan application alleged in paragraph 41.

45.   On or about December 1, 2006, the defendants instructed Stonebrook Title to escrow the remaining funds generated by the

<u>U.S. v. Greenfield, et al.</u>

fraudulent sale of Unit 620 to be used to fund Step-One Cash Purchaser J.N.'s purchase of Unit 101.

46. On or about December 13, 2006, the defendants caused Stonebrook Title to pay $84,000 to HELOC to compensate defendant Smith and Step-Three Leveraged Purchaser T.D. for their participation in the fraudulent sale of Unit 620.

47. On or about December 15, 2006, defendant Smith caused HELOC to pay $34,000 to a company controlled by Step-Three Leveraged Purchaser T. D. to compensate T.D. for his fraudulent purchase of Unit 620.

### Sexton Lofts Condominium Unit 101

48. On or about December 7, 2006, unindicted coconspirator T.H., a mortgage broker, filled out and submitted to a mortgage lender a loan application falsely stating that Step-Three Leveraged Purchaser A.H. had annual employment income of approximately $119,100.

49. On or about December 8, 2006, Step-One Cash Purchaser J.N. purchased Unit 101 for $233,366 using cash previously escrowed by the defendants at Stonebrook Title.

50. On or about December 11, 2006, the defendants caused J.N. to transfer title to Unit 101 to Coconspirator A with a quitclaim deed for no consideration.

U.S. v. Greenfield, et al.

51.   On or about December 11, 2006, the defendants caused
Step-Three Leveraged Purchaser A.H. to purchase Unit 101 for
$450,000 exclusively with the proceeds of a loan fraudulently
induced by the false loan application alleged in paragraph 48.

52.   On or about December 13, 2006, the defendants caused
Stonebrook Title to pay $48,750 to a nominal recipient who was
instructed to pay various parties for their participation in the
fraudulent sale of Unit 101.

53.   On or about December 13, 2006, the defendants instructed
Stonebrook Title to escrow the remaining funds generated by the
fraudulent sale of Unit 101 to be used to fund Step-One Cash
Purchaser M.L.'s purchase of Unit 123.

### Sexton Lofts Condominium Unit 123

54.   On or about December 28, 2006, unindicted coconspirator
T.J.A., a mortgage broker, filled out and submitted to a mortgage
lender a loan application falsely stating that Step-Three Leveraged
Purchaser M.M. had annual employment income of approximately
$149,700 from her employment at Amazing Home Solutions (for whom
M.M. never in fact worked) and cash deposits at M & I Bank in the
amount of $80,000 (which M.M. did not in fact have).

55.   On or about December 13, 2006, Step-One Cash Purchaser
M.L. purchased Unit 123 for $243,500 using cash previously escrowed
by the defendants at Stonebrook Title.

U.S. v. Greenfield, et al.

56.   On or about December 14, 2006, the defendants caused M.L. to transfer title to Unit 123 to Coconspirator A with a quitclaim deed for no consideration.

57.   On or about December 29, 2006, the defendants caused Step-Three Leveraged Purchaser M.M. to purchase Unit 123 for $599,000 exclusively with the proceeds of a loan fraudulently induced by the false loan application alleged in paragraph 54.

58.   On or about December 29, 2006, the defendants instructed Stonebrook Title to escrow a portion of the funds generated by the fraudulent sale of Unit 123 to be used to fund further cash purchases of Sexton Lofts units.

59.   On or about January 16, 2007, defendant Greenfield caused the Australian attorney coconspirator to pay $246,666 to a nominal recipient who was instructed to pay various parties for their participation in the fraudulent sale of Unit 123.

### Sexton Lofts Condominium Unit 406

60.   On or about December 15, 2006, unindicted coconspirator K.O., a mortgage broker, filled out and submitted to a mortgage lender a loan application falsely stating that Step-Three Leveraged Purchaser J.S. had annual employment income of approximately $96,000.

U.S. v. Greenfield, et al.

61.   On or about December 15, 2006, Step-One Cash Purchaser R.J. purchased Unit 406 for $251,089 using cash previously escrowed by the defendants at Stonebrook Title.

62.   On or about December 15, 2006, the defendants caused R.J. to transfer title to Unit 406 to Coconspirator A with a quitclaim deed for no consideration.

63.   On or about December 15, 2006, the defendants caused Step-Three Leveraged Purchaser J.S. to purchase Unit 406 for $395,000 exclusively with the proceeds of a loan fraudulently induced by the false loan application alleged in paragraph 60.

64.   On or about December 15, 2006, the defendants wired $100,000 of the proceeds of the fraudulent sale of Unit 406 to defendant Greenfield's unindicted Australian coconspirator.

65.   On or about December 15, 2006, the defendants instructed Stonebrook Title to escrow the remaining funds generated by the fraudulent sale of Unit 406 to be used to fund Step-One Cash Purchaser Heartland USA's purchase of Unit 219.

### Sexton Lofts Condominium Unit 219

66.   On or about December 2, 2006, defendant Smith caused HELOC to fill out and submit to a mortgage lender a loan application falsely stating that Step-Three Leveraged Purchaser T.D., who had been recruited by defendant Smith, had annual employment income of approximately $90,000.

14

U.S. v. Greenfield, et al.

67. On or about December 19, 2006, defendant Smith caused First-Step Cash Purchaser Heartland USA to purchase Unit 219 for $285,000 using cash previously escrowed by the defendants at Stonebrook Title.

68. On or about December 19, 2006, defendant Smith caused Heartland USA to transfer title to Unit 219 to Coconspirator A with a quitclaim deed for no consideration.

69. On or about January 2, 2007, the defendants caused Step-Three Leveraged Purchaser T.D. to purchase Unit 219 for $380,000 exclusively with the proceeds of a loan fraudulently induced by the false loan application alleged in paragraph 66.

70. On or about January 3, 2007, the defendants instructed Stonebrook Title to escrow the funds generated by the fraudulent sale of Unit 219 to be used to fund First-Step Cash Purchaser Heartland USA's purchase of Unit 312.

### Sexton Lofts Condominium Unit 312

71. On or about January 8, 2007, defendant Smith caused Step-One Cash Purchaser Heartland USA to purchase Unit 312 for $385,000 using cash previously escrowed by the defendants at Stonebrook Title.

72. On or about January 30, 2007, defendant Smith attempted without success to qualify T.D. as a Step-Three Leveraged Purchaser by faxing a letter falsely representing to a mortgage lender that

15

U.S. v. Greenfield, et al.

T.D. was the "Vice President of Sales and Marketing" of KevL Records, and falsely listing defendant Smith's home address as the business address of KevL Records.

73.   On or about May 23, 2007, the defendants caused Step-Three Leveraged Purchaser S.T. to purchase unit 312 directly from Heartland USA with the proceeds of a loan the defendants fraudulently induced by giving $63,470.02 to S.T. and instructing him to pass those funds off as his own at closing.

74.   On or about May 23, 2007, the defendants directed Stonebrook Title to send $561,627.97, an amount which included the proceeds of S.T.'s purchase of Unit 312, to an unindicted coconspirator in the Twin Cities.

### Sexton Lofts Condominium Unit 105

75.   On or about January 24, 2007, unindicted coconspirator L.F., a mortgage broker, filled out and submitted to a mortgage lender a loan application falsely stating that Step-Three Leveraged Purchaser J.H. had annual employment income of approximately $162,744.

76.   On or about January 24, 2007, defendant Greenfield caused "ARED" to purchase Unit 105 for $350,000 using a combination of cash previously escrowed by the defendants at Stonebrook Title and funds in the amount of $250,000 provided by Coconspirator A.

<u>U.S. v. Greenfield, et al.</u>

77.   On or about January 24, 2007, defendant Greenfield caused "ARED" to transfer title to Unit 105 to Coconspirator A by quitclaim deed for no consideration.

78.   On or about January 24, 2007, the defendants caused Step-Three Leveraged Purchaser J.H. to purchase unit 105 for $625,000 exclusively with the proceeds of a loan fraudulently induced by the false loan application alleged in paragraph 75.

79.   On or about January 24, 2007, the defendants directed Stonebrook Title to write a check to Coconspirator A in the amount of $260,000 as repayment for the monies he provided to facilitate "ARED's" original purchase of unit 105.

80.   The defendants directed Stonebrook Title to hold in escrow the remaining funds from the fraudulent sale of Unit 105.

### Sexton Lofts Condominium Unit 119

81.   On or about March 7, 2007, Step-One Cash Purchaser S.J.F purchased unit 119 for $366,756 with cash provided by the defendants.

82.   On or about March 7, 2007, the defendants caused N.B. to purchase unit 119 directly from SJF for $700,000 entirely with the proceeds of a loan fraudulently induced by a false representation that N.B. intended to utilize Unit 119 as his primary residence.

83.   On or about March 7, 2007, the defendants caused Stonebrook Title to wire $679,328.78, an amount which included the

17

U.S. v. Greenfield, et al.

proceeds of the fraudulent sale of Unit 119, to an unindicted coconspirator in Minnesota.

All in violation of Title 18, United States Code, Section 371.

### COUNTS 2 - 5
(Mortgage Fraud by Means of Interstate Wire)
18 U.S.C. §1343

84. The grand jury realleges and incorporates by reference the allegations contained in paragraphs 1 through 83 above as though fully stated herein for the purpose of alleging the substantive wire fraud offenses in Counts 2 through 5 below.

85. On or about the dates set forth below, in the State and District of Minnesota, the defendants,

**GERALD JAMES GREENFIELD, AND
NICHOLAS RYAN DELON SMITH,**

for the purpose of executing the aforementioned scheme to defraud, did knowingly transmit and cause to be transmitted in interstate commerce, by means of wire communications, certain signals and sounds, as further described below:

| COUNT | ON OR ABOUT DATE | WIRE COMMUNICATION | SEXTON LOFTS TRANSACTION TO WHICH INTERSTATE WIRE RELATES |
|-------|------------------|--------------------|----------------------------------------------------------|
| 2 | September 25, 2006 | Wire transfer of $391,763.37 from outside of Minnesota to Stonebrook Escrow Account within Minnesota | Purchase by Step-Three Leveraged Purchaser P.A. of Unit 202 |
| 3 | October 4, 2006 | Wire transfer of $445,732 from outside of Minnesota to North Central Title Escrow Account within Minnesota | Purchase by Step-Three Leveraged Purchaser V.H. of Unit 212 |

U.S. v. Greenfield, et al.

| COUNT | ON OR ABOUT DATE | WIRE COMMUNICATION | SEXTON LOFTS TRANSACTION TO WHICH INTERSTATE WIRE RELATES |
|-------|------------------|--------------------|-----------------------------------------------------------|
| 4 | October 27, 2006 | Wire transfer of $298,058.55 from outside of Minnesota to North Central Title Escrow Account within Minnesota | Purchase by Step-Three Leveraged Purchaser V.P. of Unit 205 |
| 5 | November 30, 2006 | Wire transfer of 389,218.05 from outside of Minnesota to Stonebrook Title Escrow Account within Minnesota | Purchase by Step-Three Leveraged Purchaser T.D. of Unit 620 |

All in violation of Title 18, United States Code, Section 1343.

## MONEY LAUNDERING VIOLATIONS

86.   The grand jury realleges and incorporates paragraphs 1 through 83 of this Indictment as though fully stated herein for the purpose alleging the money laundering violations in Counts 6 through 8 below.

### COUNT 6
(Conspiracy to Commit Concealment Money Laundering)
18 U.S.C. § 1956(h)

87.   From in or about 2006 through on or about February 9, 2010, in the State and District of Minnesota and elsewhere, the defendant,

### GERALD JAMES GREENFIELD,

did knowingly and willfully combine, confederate and agree with other persons known and unknown to the grand jury to commit certain money laundering offenses against the United States, that is:

19

U.S. v. Greenfield, et al.

(a)    knowingly and willfully to conduct and attempt to conduct financial transactions affecting interstate commerce, with each transaction involving the proceeds of a specified unlawful activity, namely, the conspiracy and wire fraud alleged in Counts 1 through 5 above, knowing that each transaction was designed to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of unlawful activity and while conducting and attempting to conduct each financial transaction knowing that the property and monies involved in each transaction represented the proceeds of some sort of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(b)    knowingly and willfully to transmit and attempt to transmit funds from a place in the United States to or through a place outside the United States and to a place in the United States from or through a place outside of the United States, knowing that each such transmission of funds represented the proceeds of some form of unlawful activity and knowing that each such transmission was designed to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

U.S. v. Greenfield, et al.

(c)   knowingly and willfully to conduct and attempt to conduct financial transactions affecting interstate commerce involving property represented by an undercover federal law enforcement officer to be the proceeds of specified unlawful activity, namely, illegal narcotics trafficking, knowing that each transaction was designed to conceal and disguise the nature, location, source, ownership, and control of property defendant Greenfield believed to be the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(B).

**MANNER AND MEANS**

88.   It was part of the money laundering conspiracy that proceeds of specified unlawful activity and proceeds represented by a law enforcement officer of the United States to be the proceeds of specified unlawful activity would be converted into capital stock of a company which defendant Greenfield vigorously promoted as a lucrative investment, namely, Digital Town, Inc., in three steps.

89.   In step one, defendant Greenfield caused proceeds of specified unlawful activity and proceeds represented to be the proceeds of specific unlawful activity to be wired from the United States to an unindicted Australian attorney coconspirator to be held for a period of time in a bank account located in Australia.

U.S. v. Greenfield, et al.

90.   In step two, the Australian attorney coconspirator, pursuant to instructions provided by Greenfield, wired the same money to a brokerage firm in the United States or an off-shore trust for the purpose of purchasing shares of Digital Town, Inc. in nominee names and in the name of the Australian attorney coconspirator rendering it difficult for anybody, including law enforcement officers, to determine that the beneficial owners of the stock were Greenfield and his coconspirators.

91.   On or about May 30, 2007, defendant Greenfield caused a coconspirator to transfer by international wire $568,000 of the proceeds of the Sexton Lofts mortgage fraud described in paragraphs 1 through 83 above to the Australian attorney coconspirator.

92.   On or about June 8, 2007, Greenfield caused the Australian attorney coconspirator to wire $500,000 of the $568,000 from Australia to Penson Financial Services in Dallas, Texas in order to purchase 124,400 shares of stock in Digital Town, Inc. in the name of the Australian attorney coconspirator to be beneficially owned and controlled by Greenfield and his coconspirators.

93.   Between December 14, 2006 and May 30, 2007, defendant Greenfield caused $1,430,000 representing the profits of the Sexton Lofts mortgage fraud scheme to be wired from the United States to the Australian attorney coconspirator.

U.S. v. Greenfield, et al.

94.   Between December 22, 2006 and June 12, 2007, the Australian attorney coconspirator, pursuant to defendant Greenfield's instructions, wired $758,314 in profits to and for the benefit of defendant Greenfield and Coconspirator A.

95.   On or about June 30, 2009, at Manny's restaurant in downtown Minneapolis, Minnesota, defendant Greenfield met with an undercover law enforcement officer and agreed to transfer to the Australian attorney coconspirator a substantial sum of money to be provided in the form of currency by the undercover officer and represented by the undercover officer to be the proceeds of illegal narcotics trafficking so that the Australian attorney coconspirator could, in turn, purchase with those funds stock in Digital Town, Inc. in nominee name to be beneficially owned by the undercover officer.

96.   On or about November 12, 2009, defendant Greenfield phoned the undercover agent from the State of Minnesota and, during the ensuing conversation, defendant Greenfield agreed to meet the undercover agent in Las Vegas, Nevada, to receive a cash sum from the undercover officer represented to be the proceeds of illegal narcotics trafficking and to send that money to the Australian attorney coconspirator to purchase stock in Digital Town, Inc. in nominee name for the benefit of the undercover officer.

U.S. v. Greenfield, et al.

97. On or about November 19, 2009, defendant Greenfield and the undercover officer met in Las Vegas, Nevada, where Greenfield received $25,000 in currency which he agreed to transfer to the Australian attorney coconspirator whom Greenfield instructed to, in turn, transfer that money to an offshore trust which was to purchase $25,000 worth of capital stock of Digital Town, Inc. to be held in nominee name for the benefit of the undercover officer.

98. On or about December 1, 2009, defendant Greenfield delivered to the undercover officer by mail a copy of a Stock Purchase Agreement evidencing the beneficial ownership by the undercover officer of the $25,000 worth capital stock of Digital Town, Inc. stock into which the $25,000 received by defendant Greenfield had been converted.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT 7
(Engaging in a Monetary Transaction in Property Derived from
Specified Unlawful Activity)
18 U.S.C. § 1957

99. On or about December 5, 2006, in the State and District of Minnesota, the defendant,

**NICHOLAS RYAN DELON SMITH,**

did knowingly engage in a monetary transaction in and affecting interstate commerce in criminally derived property of a value

U.S. v. Greenfield, et al.

greater than $10,000.00 which was derived from specified unlawful activity, that is, the wire fraud scheme which was the object of the conspiracy described in paragraphs 1 through 83 above, namely, defendant Smith caused the transfer of $25,500 from the Highland Bank account of Heloc, Inc. to a third party for the purchase of an automobile for the personal use of defendant Smith.

All in violation of Title 18, United States Code, Section 1957.

### COUNT 8
(Engaging in a Monetary Transaction Criminally Derived Property)
18 U.S.C. § 1957

100. On or about June 8, 2007, in the State and District of Minnesota and elsewhere, the defendant,

### GERALD JAMES GREENFIELD,

did knowingly engage in a monetary transaction in and affecting interstate commerce in criminally derived property of a value greater than $10,000.00 which was derived from specified unlawful activity, that is, the wire fraud scheme which was the object of the conspiracy described in paragraphs 1 through 83 above, namely, defendant Greenfield caused $500,000 to be wired in interstate and foreign commerce from Australia to Penson Financial Services in Dallas, Texas for the purchase of 124,400 shares of capital stock of Digital Town, Inc.

U.S. v. Greenfield, et al.

All in violation of Title 18, United States Code, Section 1957.

## FORFEITURE ALLEGATIONS

Counts 1 through 8 of this Indictment are hereby realleged and incorporated as if fully set forth herein by reference, for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

As the result of the offenses alleged in Counts 1 through 5 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Sections 371 and 1343.

As a result of the offenses alleged in Counts 6 through 8 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in said money laundering violations and all property traceable to such property, including the sum of money involved in each of Counts 6 through 8 of this Indictment, as to which the defendants are jointly and severally liable.

U.S. v. Greenfield, et al.

If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and by Title 28, United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Sections 371, 981(a)(1)(C), 982(a)(1), 1343, 1956(h) and 1957, and Title 28, United States Code, Section 2461(c).

A TRUE BILL

<div style="display: flex; justify-content: space-between;">

UNITED STATES ATTORNEY

FOREPERSON

</div>